IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT CIPRIANI | : | Civ. No.  4:12-CV-01335 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| LIBERTY LIFE ASSURANCE | : | |
| COMPANY OF BOSTON | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

May 21, 2014

Before the Court is Defendant Liberty Life Assurance Company of Boston's

Motion for a Protective Order to Prohibit Conducting Depositions Requested by

Plaintiff and a Brief in Support of that Motion (ECF Nos. 21, 22).[1]  The Motion

seeks to prohibit Plaintiff Scott Cipriani from conducting two depositions the

Defendant asserts are beyond the scope of appropriate discovery for this action.

The Plaintiff filed a Brief in Opposition to the Motion (ECF No. 24) and the

Defendant filed a Reply Brief (ECF No. 25).

For the following reasons, the Motion is granted in part and denied in part.

---

[1] Federal Rule of Civil Procedure 26(c) authorizes parties to move for, and the court to issue for good cause, a protective order forbidding discovery.

## I.    INTRODUCTION

This action concerns a claim asserted by Plaintiff Scott Cirpriani seeking long term disability benefits filed pursuant to the Employee Retirement Income Security Act (ERISA), §502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  Liberty Life Assurance Company of Boston ("Defendant" or "Liberty Life") is the insurer for benefits under the long term disability plan provided by Plaintiff's employer, The Turner Corporation ("Turner").  Liberty Life provides long term disability insurance to Turner employees under a group disability income policy ("Turner LTD Policy").  Cipriani was covered under the Turner LTD Policy as a result of his employment as a Project Superintendent for Turner.

Cipriani commenced disability leave from his position at Turner on February 23, 2009, following a motor vehicle accident in which he was injured.  Cirpriani received benefits under a Turner Short Term Disability plan until the maximum 90-day period expired.  On May 25, 2009, Cipriani began to receive long term disability benefits under the Tuner LTD Plan.

Under the policy, persons in Cipriani's employment class were eligible to receive benefits for a 24-month period if their medical conditions prevented them from performing the material duties of their occupations.  After benefits were paid for the 24-month period, a person was eligible to continue receiving benefits if his

2

medical condition prevents him from performing the material duties of any occupation.

Cipriani received benefits under the Turner LTD Policy from May 25, 2009 through November 17, 2011 when benefits were discontinued due to Liberty Life changing Cipriani's disability status to an "any occupation" definition.  Liberty Life asserted that the discontinuance of benefits was based upon its determination that Cipriani's physical conditions did not prevent him from returning to any alternative occupations identified during the administrative review process. Cipriani pursued an administrative appeal that was denied on June 11, 2012. Cipriani then filed the instant action.

In support of his claims, Cipriani seeks to take two depositions subject to the instant motion that Liberty Life desires to prevent: depositions of Stephanie Berry ("Berry") and Dr. Ronald DiSimone (Dr. DiSimone).  Berry is the Liberty Life claim representative principally responsible for Liberty Life's final administrative decisions.  Dr. DiSimone was one of Plaintiff's treating physicians consulted in the review process.  Liberty Life objects because it asserts these depositions are directed solely to the merits of Liberty Life's administrative decision, which is not appropriate discovery in an ERISA action in this posture.

## II.    DISCUSSION

A. **ERISA Discovery**

ERISA empowers a person denied benefits under an employee benefit plan to challenge that denial in federal court.  29 U.S.C. § 1132(a)(1)(B).  The conflicting values at issue in the Motion *sub judice* are the general limitation on discovery in ERISA actions and the strain of cases recognizing that limited discovery is appropriate in a narrow set of circumstances.  A fundamental goal of ERISA is to provide "a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously."  Accord Semien v. Life Ins. Co. of N. Am., 436 F.3d 805, 815 (7th Cir. 2006) (quoting Perry v. Simplicity Eng'g, 900 F.2d 963, 967 (6th Cir. 1990)) (internal quotations omitted).  Consequently, discovery is often limited in ERISA actions; in some cases, depending on the court's applicable standard of review, discovery beyond the administrative record is inappropriate.

The United States Supreme Court articulated the appropriate standard of review for this species of ERISA action, stating that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  When the challenged plan

grants the administrator discretionary authority by its terms, the applicable

standard of review is "arbitrary and capricious." <u>Estate of Kevin Schwing v. Lilly</u>

<u>Health Plan</u>, 562 F.3d 522, 525 (3d Cir. 2009).  Under this standard, an

administrator's interpretation of the plan "will not be disturbed if reasonable." <u>Id.</u>

at 114; <u>see also</u> <u>Mitchell v. Eastman Kodak Co.</u>, 113 F.3d 433, 437 (3d Cir. 1997).

"To be insulated from *de novo* review, a plan must communicate the idea that the

administrator not only has broad-ranging authority to assess compliance with pre-

existing criteria, but also has the power to interpret the rules, to implement the

rules, and even to change them entirely." <u>Viera v. Life Ins. Co. of N. Am.</u>, 642

F.3d 407, 417 (3d Cir. 2011) (internal quotations and citations omitted).

The policy in this case vests Liberty Life with the authority and discretion to

construe the terms of the policy and to determine benefit eligibility.  Both the

construction and determinations have conclusive and binding effect.  Specifically,

the policy states:

> Liberty shall possess the authority, in its sole discretion, to construe
> the terms of this policy and to determine benefit eligibility hereunder.
> Liberty's decisions regarding construction of the terms of this policy
> and benefit eligibility shall be conclusive and binding.

Def.'s Br. at 5.  According to this language and the controlling law, the deferential

"arbitrary and capricious" standard of review is applicable in this case.  <u>Viera</u>, 642

F.3d at 417.

5

When this deferential standard of review is applicable, the general rule is that a court's review is limited to the administrative record, and discovery is correspondingly limited.  See, e.g., Kosiba v. Merk & Co., 384 F.3d 58, 67 n.5 (3d Cir. 2004).  An exception to that general rule is that a court "may consider evidence of potential biases and conflict of interest that is not found in the administrative record."  Id.  Circumstances involving structural[2] or procedural conflict[3] provide fruitful ground for potential bias.

      1.    Structural Conflict

In Metropolitan Life Insurance Company v. Glenn, 554 U.S. 105, 123–24 (2008), the Supreme Court ruled that when an insurance company has the dual role of deciding a claim for benefits as well as paying benefits under the plan, a court reviewing the insurance company's claim determination should consider the potential conflict of interest posed by the insurance company's dual status—termed a structural conflict.  The Court further elucidated that a reviewing court should apply a totality of circumstances inquiry by examining whether any evidence exists

---

[2] A "structural conflict" exists when an insurance company both decides a claim for benefits and pays the benefits under that plain.  See, e.g., Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 123–24 (2008).

[3] A procedural conflict exists when there is some procedural irregularity or bias in the review process.  See, e.g., Rhodes v. Principal Fin. Grp., Inc., 4:10CV290, 2010 WL 4867618, at *2 (M.D. Pa. Nov. 23, 2010).

that the potential conflict created by an insurer's dual role as payer and decision-maker influenced the benefit determination.  <u>Glenn</u>, 554 U.S. at 116–17.

The existence of a structural conflict is "but one factor among many that a reviewing judge must take into account."  <u>Id.</u> at 116.  Furthermore:

> In such instances, any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance.  The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration.

<u>Id.</u> at 117.

In the wake of this seminal decision, courts have considered the impact of <u>Glenn</u>'s pronouncements on the permissible scope of discovery in ERISA benefits actions.  Many courts have ruled that plaintiffs in ERISA benefit cases are entitled to pursue limited discovery concerning the potential conflict of interest posed by an insurer's dual role as decision-maker and payer of benefits.  <u>See, e.g.</u>, <u>Rhodes v. Principal Fin. Grp., Inc.</u>, 4:10-cv-290, 2010 WL 4867618, *1–2 (M.D. Pa. Nov. 23, 2010) (Munley, J.).  Consistent with the general limitations on discovery in ERISA review cases of this posture, however, courts have often placed narrow restrictions on the scope of such allowed discovery.  <u>See, e.g.</u>, <u>id.</u>; <u>Dandridge v. Raytheon Co.</u>, 08-cv-4793, 2010 WL 376598, *5 (D.N.J. Jan. 26, 2010) (allowing discovery on

structural conflicts but denying discovery on merits of administrative decision);

Mainieri v. Board of Trustees of Operating Engineer's Local 825 Pension Fund,

07-cv-1133, 2008 WL 4224924, *3 (D.N.J. Sept. 10, 2008) ("[D]iscovery can be

taken with regard to issues that raise a good-faith allegation of procedural or

structural conflict of interest[,] but not for matters that merely speak to the merits

of the administrator's decision.").

        As one judge observed, "the majority opinion in Glenn fairly can be read as

contemplating some discovery on the issue of whether a structural conflict has

morphed into an actual conflict . . . .  But any such discovery must be allowed

sparingly and, if allowed at all, must be narrowly tailored so as to leave the

substantive record essentially undisturbed."  Denmark v. Liberty Life Assur. Co. of

Boston, 566 F.3d 1, 10 (1st Cir. 2009) (Selya, J.); see also Dandridge, at *5.

                        2.        Procedural Conflict

        Courts may also allow limited discovery when procedural conflicts are

present.  The United States Court of Appeals for the Third Circuit has stated that

allegations of fraud or mistake are subject to investigation, but did not articulate

the specific parameters of that discovery.  See Gardner v. Unum Life Ins. Co., 354

Fed. App'x 642, 648 n.4 (3d Cir. 2009).  To permit such discovery, district courts

within the Third Circuit have required plaintiffs to make "a good-faith allegation of

a procedural irregularity or bias in the review process that is sufficient to warrant additional discovery." Mainieri v. Board of Trs. of Operating Eng'r's Local 825 Pension Fund, 07-cv-1133, 2008 WL 4224924, *3 (D.N.J. Sept. 10, 2008); see also Rhodes, at *2; Dandridge, at *5.  Nevertheless, when a plaintiff's allegation of bias or irregularity amounts to a dispute over the reasonableness of a defendant's benefits decision and plaintiff seeks to reexamine the merits of that determination, courts generally do not allow further discovery beyond the administrative record. Rhodes, at *3.

      B.    The Depositions Sought Are Allowed but Narrowly Tailored

Plaintiff seeks to depose Stephanie Berry, the Liberty Life claim representative who denied his claim, and Dr. DeSimone, Cipriani's treating physician, alleging both structural and procedural conflicts meriting deposition testimony.  According to Plaintiff, the primary event he wants to investigate and substantiate is an alleged phone conversation between Dr. Phillip Marion (the medical expert employed by Liberty Life) and Dr. DiSimone in late May of 2012. Plaintiff alleges that during this phone call, Dr. Marion verbally outlined to Dr. DiSimone the findings of the Functional Capacity Evaluation (FCE) performed on

Plaintiff, but did not provide Dr. DiSimone a physical copy of the FCE to review.[4]

Plaintiff further alleges that although the actual FCE was wrought with error and

unreliable, based on this conversation in which Dr. Marion allegedly

misrepresented the contents of the FCE, Dr. DiSimone signed a faxed document

authored by Dr. Marion reflecting their conversation but not the actual FCE

contents not reviewed by Dr. DiSimone.

Dr. DiSimone had previously opined that Cipriani was totally disabled.  The

Plaintiff asserts, therefore, that these subsequent communications were Liberty's

attempt to manipulate the administrative record and circumvent Dr. DiSimone's

prior assessment.  Plaintiff alleges this was both a structural conflict that morphed

into an actual conflict based on selection of Dr. Marion and the surrounding

circumstances, and a procedural conflict exhibiting irregularity or bias sufficient to

warrant additional discovery.

To support his "good-faith allegation" of irregularity or bias, Plaintiff

supplies a letter authored by Dr. DiSimone to Plaintiff's attorney, dated July 13,

2013.  Dr. DiSimone wrote the letter in regard to written statement he prepared on

---

[4] According to Plaintiff's brief, the conversation was ex parte and his attorney was
unaware the phone call between Dr. DiSimone and Dr. Marion was scheduled.  Consequently,
Plaintiff's counsel did not furnish Dr. DiSimone with the necessary information to prepare for
the communication.

June 4, 2012 in response to the conversation with Dr. Marion in which he agreed

with Dr. Marion's assessment of the FCE.  Dr. DiSimone wrote that:

> I was never given an opportunity to review that [FCE] which, since
> speaking to you recently, I have had a chance to study.  I, therefore,
> believe that there is a procedural conflict within the record.  I was not
> aware of certain flaws in the FCE that were highly relevant to the
> question of disability.  Dr. Marion certainly should have been aware
> of these flaws, but did not bring them to my attention.  I believe this
> was due to his biases in the case in that he was clearly trying to find
> Mr. Cipriani was not disabled, despite rather extensive and severe
> injuries.
>
> . . .
>
> It is clear to me that what Dr. Marion, acting on behalf of Liberty Life,
> was attempting to do was get around or circumvent my opinion letter
> that stated Mr. Cipriani was totally disabled.  And, I believe that is
> why his conversation with me was not a full disclosure of the FCE . . .
> .  I believe that Dr. Marion had a conflict of interest, in that an
> injustice will occur if the Court does not allow additional discovery in
> this matter as my medical opinions of disability were skewed and
> averted

Pl.'s Br. Opp'n, Ex. A, Dr. DiSimone Letter, Nov. 22, 2013, ECF No. 24-1

[hereinafter Pl.'s Br. Opp'n].

Dr. DiSimone's letter, along with Plaintiff's other good-faith allegations,

rise to the level such that potential procedural irregularities or biases merit further

discovery.  See, e.g., Mainieri, at *3.  Furthermore, some discovery is warranted to

investigate, not whether Liberty Life's decision was reasonable based on the merits

of the administrative record, but whether its position as the entity both determining

11

the merits of a claim and paying benefits presented a structural conflict that did indeed morph into an actual conflict in this instance.  See, e.g., Rhodes, at *1–2. That discovery, however, should be narrowly tailored to investigating only these issues and not reexamine the merits of Liberty Life's decision or supplement the administrative record with merit-oriented factual information.  See, e.g., Denmark, 566 F.3d at 10.

## 1.   Deposition of Stephanie Berry

Plaintiff seeks to depose Stephanie Berry, the Liberty Life claim representative who denied his claim to investigate the potential structural and procedural conflicts at issue.  Plaintiff initially proposed sixteen (16) questions or areas of questioning, but subsequently admitted questions 9 through 12 are satisfied by the administrative record and question 7 was answered by Defendant. Consequently, eleven (11) questions remain in dispute.

Plaintiff is permitted to ask only the questions hereinafter delineated at Berry's deposition.[5]

---

[5] Regarding the time and place of the deposition, Federal Rule of Civil Procedure 26(c)(1)(B) allows the Court to specify the "terms, including time and place, for the disclosure or discovery."  Plaintiff initially noticed the deposition for his attorney's office in Williamsport, Pennsylvania, which the Court finds inappropriate in light of the fact that Berry resides and is employed in Dover, New Hampshire.  The Plaintiff may conduct the deposition in Dover, New Hampshire, by telephone, or at a time, place and by a medium agreed to by the Parties.  See, e.g. 8A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 2112 (3d ed. 2014).

Proposed questions 1 and 2 suggest to have Berry verify the record she had in her possession at the time of her administrative decision, and ask her to identify those records or opinions which she relied on in support of her determination.  Pl.'s Br. Opp'n, at 8.  Liberty Life has produced the entire claim file concerning Cipriani's administrative claim for benefits, and has confirmed in discovery responses that there are no additional documents relating to Cipriani's claim other than those contained in the administrative record.  Def.'s Br. Reply, at 2.  Accordingly, Plaintiff's proposed questions 1 and 2 are satisfied by the administrative record, do not investigate areas of structural or procedural conflict with the necessary specificity, and are therefore inappropriate for this action.  See, e.g., Denmark, 566 F.3d at 10.

Questions 3 through 5 seek to discern how medical experts were selected to review and provide the opinion as to Cipriani's benefits, how frequently the medical expert/experts named in Liberty Mutual claims file are used by Liberty Mutual to review Long Term Benefits, and how frequently Liberty Mutual uses the individual or facility that performed Cipriani's FCE together with whether Liberty uses other individuals or facilities.  Pl.'s Br. Opp'n, at 9.  These questions do not seek to reexamine the reasonableness of the merits, but to explore a potential procedural bias or the possibility of structural conflict potentiating as actual

conflict, are not adequately addressed by the administrative record, and are therefore appropriate discovery in this instance.

Question 6 asks whether Berry sought out or requested Dr. DiSimone be contacted personally regarding his opinion of Cipriani's disability or whether someone else at Liberty Mutual made the request.  Pl.'s Br. Opp'n, at 10.  This question addresses potential actions which may indicate an attempt to manipulate the administrative record and the Plaintiff may appropriately explore it.

Question 8 concerns whether Berry or anyone at Liberty Mutual requested a medical opinion or record review from any medical doctor or specialist that indicated Plaintiff was totally and/or permanently disabled.  Pl.'s Br. Opp'n, at11. Any such request and examination would be reflected by the administrative record in the case, and is therefore inappropriate for this deposition.

Question 13 presents a line of inquiry that seeks to ask about issues specifically related to the claim filed, for example, issues surrounding the notes of Jennifer Sullivan, a nurse employed by the Defendant.  Pl.'s Sullivan's comments, and other areas involved in this line of questioning, are contained within the administrative record.  Furthermore, questioning Berry about the details of reviewing the files in the administrative record and her interpretation of those documents are blatant questions about the substantive aspects of the decision-

making process that are not narrowly tailored to investigate structural or procedural bias. Consequently, this line of questioning is not permissible at Berry's deposition. See, e.g., Denmark, 566 F.3d at 10.

Question 14 seeks to verify that Plaintiff's counsel was not provided the written documents signed by Dr. DiSimone verifying the verbal conversation between Dr. DiSimone and Dr. Marion in June of 2012. Pl.'s Br. Opp'n, at 13. The administrative record reflects, however, that neither Dr. Marion's peer review report nor Dr. DiSimone's signed statement provided to Dr. Marion as part of that peer review were sent to Plaintiff's counsel prior to Liberty Life's issuance of its appeal determination. Furthermore, Liberty Life does not dispute this fact. Def.'s Br. Reply 5, Aug. 8, 2013, ECF No. 25 [hereinafter Def.'s Br. Reply]. Consequently, this questioning is inappropriate for Berry's deposition.

Question 15 asks whether Berry has any knowledge of whether Dr. DiSimone was ever shown the FCE performed by Defendant to determine its validity. Pl.'s Br. Opp'n, at 13. This question investigates potential procedural conflict and actual conflict resulting from structural conflict, and is not necessarily satisfied by the existing administrative record. The Plaintiff may ask Berry this question at a deposition.

The final proposed are of inquiry, Question 16, seeks to ask "[a]ny other

15

questions 'from the Liberty Mutual claim file' that may be relevant to the issues in

dispute." Pl.'s Br. Opp'n, at 14. Although this "catch-all" line of questioning may

ensnare a fact or two demonstrating bias among the many responses produced from

casting a wide net on the waters, Plaintiff's fishing expedition outlined in this

question is not the "narrowly tailored" discovery sanctioned by the law. Denmark,

566 F.3d at 10. Without more articulated specificity, Plaintiff's proposed broad

area of inquiry is inappropriate for Berry's deposition.

2.   Deposition of Dr. DiSimone

The entire scope of Plaintiff's specific purposes for seeking to depose Dr.

DiSimone are not entirely clear from his briefs. Plaintiff's asserted support for

deposing Dr. DiSimone are broad allegations that Plaintiff seeks to show generally

that "a mistake and or fraud occurred within the administrative record" and to

correct alleged errors perpetrated by Dr. Marion (intentionally or not). Pl.'s Br.

Opp'n, at 15–16. To the extent that Plaintiff is attempting to supplement the

administrative record with Dr. DiSimone's testimony concerning his medical

evaluations both contained within the administrative record and those evaluations

performed after the close of the administrative record, these areas of questioning

are well beyond the scope of that allowed in ERISA actions and shall not be

discussed. See, e.g., Rhodes, at *3.

16

Plaintiff, however, through Dr. DiSimone's assertions advanced in his letter of November 22, 2013 (quoted *supra*), has alleged a good-faith basis for investigating procedural conflict.  Dr. DiSimone's knowledge of facts relating to the procedural conflict is confined specifically to the following narrowly tailored areas of questioning that the Plaintiff is allowed to pursue: I) Dr. DiSimone's observation of flaws in the FCE and the concerns they elicit;[6] and, ii) Dr. DiSimone's discussions with Dr. Marion and other Liberty Life representatives, where the substance of those conversations is not fully reflected in the administrative record.

These areas of questioning are the extent to which Dr. DiSimone should have information relevant to investigating possible procedural conflict and actual bias in the review process.  Any questioning outside these narrowly tailored topics, especially including questions related to Dr. DiSimone's medical evaluations after the close of the administrative record, go to the merits and reasonableness of the administrative decision and are therefore inappropriate in light of the law.  See, e.g. Denmark, 566 F.3d at 10.  Liberty Life, of course, retains the right to make

---

[6] Dr. DiSimone may reference information from his past medical evaluations contained in the administrative record *only* for the purposes of explaining what he believes are flaws in the FCE.  He may not discuss the reasonableness of Liberty Life's determinations based on the information in the FCE.  He may only identify potential errors or discrepancies with the document itself that may indicate procedural bias.  Furthermore, Dr. DiSimone *may not* discuss any medical evaluation of Cipriani that took place after the close of the administrative record.

standing objections on the record, and admissibility determinations of evidence in conflict may take place when appropriate in the future.

## III.   CONCLUSION

In light of the foregoing, Liberty Life's Motion for a Protective Order is denied in part and granted in part.  Plaintiff may depose the two witnesses only in the narrowly tailored areas articulated in order to investigate potential procedural and structural conflict issues.

An appropriate Order follows.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge