# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT CIPRIANI, | : | Civil No. 4:12-CV-1335 |
| | : | |
| Plaintiff | : | (Judge Brann) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| LIBERTY LIFE ASSURANCE | : | |
| COMPANY OF BOSTON, | : | |
| | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

**I.     INTRODUCTION**

This is a case involves a challenge to the denial of the plaintiff's claim for long-term disability ("LTD") benefits under an employee benefit plan provided by his employer, The Turner Company, and administered by Liberty Life Assurance Company ("Liberty Life"). The plaintiff, Scott Cipriani, applied for LTD benefits, and Liberty Life denied the claim, and an appeal of that denial, approximately two years after Cipriani had initially been provided disability benefits. Thereafter, Mr. Cipriani initiated this lawsuit, claiming that Liberty's denial of his claim was in violation of the Turner LTD Plan. Mr. Cipriani brings his claim pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

The parties disagree on the standard of review that applies to the plaintiff's claim, and the plaintiff has filed a motion seeking a threshold determination of this issue. The plaintiff argues that the court should apply a *de novo* standard of review, whereas the defendant maintains that this claim dispute is subject to a more deferential arbitrary and capricious standard.

The parties agree that under ERISA, courts are to apply a *de novo* review to a plan administrators' decision unless the ERISA plan in question grants discretion to the plan administrator or fiduciary to determine eligibility for benefits or to interpret the terms of the plan. See Estate of Schwing v. Lily Health Plan, 562 F.3d 522, 525 (3d Cir. 2009). The parties also agree that where the plan administrator is vested with discretion to determine eligibility, courts are to review claims brought under § 502(a)(1)(B) for abuse of that discretion, under an arbitrary and capricious standard. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 114-15 (1989). The parties disagree about which standard applies under the facts of this case. To resolve the matter, the plaintiff has filed a motion urging the court to apply a *de novo* review, notwithstanding the fact that under the plan in question, Liberty Life has discretion to determine eligibility of benefits. The plaintiff argues that the facts of record indicate that Liberty Life delegated its responsibility for determining whether Mr.

Cipriani qualified for benefits to an unauthorized third party, Liberty Mutual Insurance Company, and, therefore, the *de novo* standard should apply.

Liberty Life counters that it is, in fact, undisputed that Liberty Life made the administrative determination in this case. Liberty Life contends that Liberty Life did not delegate authority to Liberty Mutual, and that the plaintiff's arguments to the contrary are simply a misunderstanding of the actual facts of this matter and the roles played by Liberty Life and Liberty Mutual under a longstanding arrangement between the two insurers.

The district court referred the motion to the undersigned. For the reasons that follow, it will be recommended that the plaintiff's motion be denied, and that the court review the LTD benefits decision under an abuse-of-discretion, or arbitrary and capricious, standard. Yet, while we reach this conclusion, we are also constrained to note that this controversy would be entirely avoidable if the defendant exercised greater care and clarity in its administration of this plan.

## II. BACKGROUND

Scott Cipriani, a resident of Lycoming County, Pennsylvania, was involved in an automobile accident on August 9, 2008, in Dallas Township, Luzerne County, Pennsylvania. He sustained serious injuries as a result, including cervical spine injuries, lumbar spine injuries, and injuries to both hips. (Compl. ¶ 8.) At the time

of the accident, Cipriani worked for The Turner Corporation as a construction supervisor. (Id. ¶ 9.)

As part of his employee benefits with Turner, Cipriani was covered under a policy of disability insurance that was issued by Liberty Life. (Compl., Ex. A.) Cipriani's LTD benefits under the policy began on May 25, 2009. The policy provided LTD coverage for a period of two years, and after May 25, 2009, Cipriani was obligated under the plan to show that he was disabled from "any occupation" as defined under the policy in order to continue receiving benefits. It appears that Cipriani continued to receive LTD benefits, at 60% of Cipriani's monthly base pay, through November 17, 2011. (Compl. ¶¶ 10-16.) Cipriani was thereafter denied continued LTD benefits, apparently because Liberty Life concluded that he no longer satisfied his burden of proving that he was disabled from any occupation.[1] During this time, Cipriani also applied for and received Social Security disability benefits. (Id. ¶ 18.) According to Cipriani, under the Turner LTD Plan, he was entitled to receive disability benefits through age 66 and 10 months; as it happens, his benefits were cut off at age 50, and he claims to be entitled to an additional 16 years and 5 months of benefits at approximately $60,000 per year.

---

[1] Because we are not charged with reviewing the merits of Liberty Life's benefits determination, we find it unnecessary to discuss in detail the handling of Cipriani's claim prior to this lawsuit.

Cipriani initiated this action on July 10, 2012. (Doc. 1.) Liberty Life answered on November 7, 2012. (Doc. 17.) The plaintiff filed the instant motion seeking a determination of the standard of review on October 20, 2014. (Doc. 33.) The motion is fully briefed and was referred to the undersigned on December 4, 2014. (Doc. 38.)

## III. DISCUSSION

The Turner LTD Policy vests Liberty Life with the authority, "in its sole discretion, to construe the terms of [the] policy and to determine benefit eligibility." (Doc. 35, Ex. 1 at LL-0037.) As noted, the parties agree that in such cases, the law is well-established that courts review plan administrator's decisions under an abuse-of-discretion standard. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Under such a standard, "a fiduciary's interpretation of a plan will not be disturbed if reasonable." Dewitt v. Penn-Del Directory Corp., 106 F.3d 514, 520 (3d Cir. 1997) (citing Firestone Tire, 489 U.S. at 111). The arbitrary and capricious standard is also applicable where reviewing decisions are made by parties other than the administrator, so long as the plan provides that the administrator can delegate the duty to another party, and the administrator properly designated that duty. Parelli v. Bell Atl.-Pa., No. 98-3392, 2000 WL 764914, at *3 (E.D. Pa. June 13, 2000); Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 584 (1st Cir. 1993). However, if the plan does not include a provision that allows the administrator to

5

designate others to carry out fiduciary responsibilities, evaluate claims, or construe the terms of the plan, then any delegation of that discretion would be unauthorized and any determinations made by an unauthorized third party would be subject to a less deferential *de novo* standard of review. Sharkey v. Ultramar Energy Ltd., 70 F.3d 226, 229 (2d Cir. 2005); Rodriguez-Abreu, 986 F.2d at 584; see also Goldstein v. Johnson & Johnson, 251 F.3d 433, 446 (3d Cir. 2001) (observing that courts have refused to apply the arbitrary and capricious standard where plan administrators do not exercise the discretion granted to them under a plan).

The plaintiff acknowledges that the plan gives Liberty Life this discretionary authority, but argues that the facts of this case as developed during deposition questions and through related documents that the plaintiff has gathered in support of his case show that Liberty Life delegated this function to Liberty Mutual, an unauthorized third party. The plaintiff thus maintains that a *de novo* standard of review is appropriate, notwithstanding the language of the plan itself.

In support of his position, the plaintiff relies upon deposition testimony given by Stephanie Berry, the Appeal Review Consultant who was chiefly responsible for the final appeal decision denying the plaintiff's claim for benefits. During her deposition, which was held in a Liberty Mutual office in New Hampshire, Ms. Berry testified that although she believed she was employed by Liberty Life, she thought

6

she was actually paid by Liberty Mutual. (Doc. 35, Ex. 2, Dep. of Stephanie Berry, at 3-4.) Ms. Berry also attested to her belief that Liberty Mutual and Liberty Life were essentially "one and the same," conceding that she never gave much thought to whether they were different or separate entities. (Id. at 6.) Ms. Berry thus testified on the one hand that she was employed by Liberty Life, and at the same time conceded her own belief that Liberty Life and Liberty Mutual were the same company, and then stated that she "think[s]" she is paid by Liberty Mutual. (Id.)

The plaintiff also argues that the letters denying Cipriani's application for continued LTD benefits were sent on Liberty Mutual letterhead, although the same letterhead also refers to Liberty Life, albeit less prominently displayed and in far smaller font, but with Liberty Life's contact information under the sender's name. (Doc. 34, Exs. B, C.) The plaintiff thus argues that the combination of the letterhead and Ms. Berry's own testimony provides sufficient evidence to show that Liberty Life delegated its administrative function for determining eligibility benefits to an unauthorized third party insurer, Liberty Mutual, whose employees the plaintiff maintains were responsible for making the adverse benefits decisions, and, therefore, argues that the benefits decision in this case is not entitled to review for abuse of discretion but is, instead, subject to a more rigorous *de novo* review.

Liberty Life takes a decidedly different view, relying chiefly upon an affidavit filed by its Assistant Secretary, James Pugh, who has endeavored to clarify the relationship between Liberty Mutual and Liberty Life, and to explain to the court that despite Ms. Berry's testimony, and despite the somewhat ambiguous letterhead used in the denial letters, the court should nevertheless conclude that Liberty Mutual did not delegate its discretion to Liberty Mutual with respect to Mr. Cipriani's LTD claim.

Mr. Pugh attests that Liberty Mutual owns 90% of Liberty Life, but Liberty Life maintains a separate board of directors, and separate officers who are elected by Liberty Life's board of directors, or who are appointed to their positions by the Liberty Life's Chairman or President. (Doc. 35, Ex. 3, Affidavit of James R. Pugh, ¶ 3.) According to Mr. Pugh, Liberty Life further maintains separate financial records and statements than does Liberty Mutual, and files these documents on its own behalf in the states in which Liberty Life transacts business as an insurer. (Id.)

Notably, Mr. Pugh attests that Liberty Life does not have any direct employees. Instead, apparently since 1964, Liberty Life and Liberty Mutual have been party to a service agreement pursuant to which Liberty Mutual provides to Liberty Life the services of personnel, wire service, computers, and other equipment to the extent necessary for Liberty Life to conduct its business. (Id. ¶ 5.) Liberty Life reimburses

Liberty Mutual for the cost of personnel, equipment, service and facilities that Liberty Mutual provides at Liberty Life's request. (Id. and Ex. A thereto, at 19.10 and 19.11 (2013 financial statement identifying the service agreement between the entities).)

Mr. Pugh states in his affidavit that the personnel assigned to provide services to Liberty Life pursuant to the agreement "generally" devote all of their time to working for Liberty Life. (Id. ¶ 6.) These employees are employees of Liberty Mutual (contrary to Ms. Berry's own understanding as to who her employer was), but according to Mr. Pugh, when they are assigned to perform services on Liberty Life's behalf, these employees "generally devote 100% of their time working for Liberty Life." (Id.) He claims that when employees are so assigned, their work is "under the control and ultimate supervision of the officers and the board of directors of Liberty Life." (Id.) This work includes, *inter alia*, investigating claims under insurance policies issues by Liberty Life, "and making decisions concerning benefit eligibility under those policies." (Id.)

The defendant relies on Mr. Pugh's affidavit, and on his affidavit almost exclusively, in support of the assertion that "although Stephanie Berry and the other Liberty Life personnel who worked on Mr. Cipriani's claim may have been paid by Liberty Mutual, at the time they were making determinations concerning the claim, they were working for Liberty Life, under the direction and control of Liberty Life's

9

officers and board of directors." (Doc. 35, at 6-7.) Thus, the defendant further notes that the initial determination to discontinue Cipriani's benefits was decided by Kristine Keebler, a Disability Case Manager for Liberty Life. (Doc. 34, Ex. 4, Letter from K. Keebler to S. Cipriani dated May 5, 2011.) The defendant also points out that Ms. Keebler notified Cipriani that he had a right under ERISA to request review of the denial by addressing a request to Liberty Life. When Cipriani took an appeal of the decision, the appeal was later issued by Ms. Berry on what the defendant represents is Liberty Life letterhead (notwithstanding that it also bears the name Liberty Mutual), in her capacity as an agent of Liberty Life, subject to the control and supervision of Liberty Life's officers and board of directors.

The plaintiff replies that the court should decline to embrace or rely on Mr. Pugh's affidavit to the exclusion of other evidence in the case, including Ms. Berry's ambiguous testimony about her employer and her relationship with both Liberty Mutual and Liberty Life. The plaintiff also argues that Liberty Life could have cleared up all confusion in this matter by acting at some point to rewrite its policies to expressly designate Liberty Mutual as its agent vested with discretion for making benefits determinations, but that Liberty Life has never done so. The plaintiff also suggests that Ms. Berry could not have been acting as an agent for Liberty Life if she

herself did not subjectively understand the nature of her agency relationship, although the plaintiff has not provided any citation in support of this argument.

This dispute boils down to a disagreement over the facts. The parties agree on the law, which is clear and well settled in this field. Liberty Life concedes in that in cases where an insurer or plan administrator has delegated its discretion for making administrative determinations to an unauthorized third party, judicial review of a challenged benefits determination will be *de novo*. And the plaintiff concedes that where a plan vests discretion in the plan administrator, review of the plan administrator's decision is for abuse of discretion. The parties agree that the plan in this case vests Liberty Life with discretion for making benefits determinations. The only question is whether the facts relevant to the review and determination of Cipriani's benefit claims show that the determination was made by Liberty Life or whether it was, instead, made by Liberty Mutual. Although we agree that Liberty Life could take steps that would avoid these sorts of legal disputes by clarifying in plan documents its relationship with Liberty Mutual, and the companies' respective roles in the benefits determination process, we believe that the evidence sufficiently indicates that Liberty Life made the benefits decisions being challenged and thus that Cipriani's claims are subject to review for abuse of discretion.

The cases that the plaintiff has relied in support of applying a *de novo* review in this case are distinguishable. Thus, in Anderson v. Unum Life Insurance Co., 414 F. Supp. 2d 1079 (M.D. Ala. 2006), the district court concluded that a *de novo* review was appropriate in a case involving a policy issued by Unum Insurance Company that designated itself as the fiduciary responsible for benefits determinations, where Unum Insurance delegated the decision-making function under the policy to a subsidiary, UnumProvident. Id. at 1097-1099. The court found that UnumProvident had made the benefits decision being challenged, and relied upon a written agreement between the related entities that designated UnumProvident as the party responsible for making claims decisions, and evidence that supported a finding that UnumProvident employees made the decision without any influence or control by Unum Insurance. Id. at 1098. The agreement between the Unum entities even noted that UnumProvident was an independent entity that would perform its services on a contract basis, independently, and not as a partner or agent of Unum Insurance. Id. Moreover, there was no evidence to indicate that Unum Insurance had involvement in the decision-making process at all. Id. at 1098-99.

In Tamizkar v. American United Life Insurance Co., No. 09-2128, 2010 WL 3973997 (D. Kan. Sept. 30, 2010), the plaintiff sought review to recover unpaid benefits allegedly due under an LTD policy issued by American United Life

12

Insurance Co., which was designated as the insurer and administrator under the group disability policy. American United had, however, delegated its decision-making authority to a third-party claims administrator under a servicing agreement. The court concluded that there was no language in the plan authorizing this designation a third party to perform this function, and relying on cases holding that the denial of benefits by an unauthorized party is subject to review under a *de novo* standard, applied such standard to the claims in that case. Id. at \*2. There was, in fact, little discussion of the issue, which the court seems to have resolved easily based chiefly on American United's own admissions. Id.

The plaintiff places great weight upon Davidson v. Liberty Mutual Insurance Company, 998 F. Supp. 1 (D. Me. 1998), but we are not persuaded that the case actually supports the plaintiff's position, although at first blush it may appear to do so. In Davidson, the court considered a claim by a plaintiff challenging the denial of benefits under an LTD plan that vested discretionary authority in Liberty Mutual. 998 F. Supp. at 8. However, Liberty Mutual had delegated its authority to Liberty Life. The court, reviewing the record, could not find any language in the plan documents that authorized this delegation of authority, and thus applied a *de novo* review to the insurer's decision to deny benefits. Id. at 8-9. In its decision the court observed that the principal decision-maker for Liberty Life was an employee of

13

Liberty Mutual – which is essentially the same as the case here. 998 F. Supp. at 9 n.11. However, the court found that Liberty Life made the benefit decision because the person who made the decision worked exclusively for Liberty Life, and was uninfluenced in any way by Liberty Mutual. Id.

What distinguishes this case from <u>Davidson</u> is that here there <u>is</u> evidence to show that the Liberty Mutual employees who were involved in the benefits determination were working for Liberty Life and were, at the time they did so, under Liberty Life's ultimate control in that capacity. The plaintiff's argument to the contrary is limited to snippets of testimony from Ms. Berry indicating that she was not entirely clear on the corporate relationship between Liberty Mutual and Liberty Life, and by the inclusion of the words "Liberty Mutual" on letterhead that Liberty Life used in its decisions denying Cipriani's claim and appeal. This letterhead also indicates that it is from Liberty Life, and in that section of the letterhead is listed the author's title and contact information. Although we believe that <u>Davidson</u> offers some superficial support for the plaintiff's claim, what it really does is simply underscore that where courts find that there has been a delegation of authority, and where the plan documents do not authorize that delegation, then review is *de novo*. Here, by contrast, it does not appear that Liberty Life actually delegated its authority to Liberty Mutual; instead, it retained its authority, but utilized the services of Liberty

Mutual employees who worked on behalf of Liberty Life with respect to review of Cipriani's claims.

In a more recent case, Judge Surrick in the Eastern District of Pennsylvania was confronted by a virtually identical dispute as is presented here, involving the relationship between Liberty Mutual and Liberty Life, and the effect of that relationship on the standard of review that should govern administrative determinations made under the policy issued by Liberty Life. <u>Lucas v. Liberty Life Assurance Co. of Boston</u>, No. 11-4417, slip op. (E.D. Pa. Mar. 28, 2014). In <u>Lucas</u>, Judge Surrick reviewed the evidence regarding the insurers' relationship, and issues directly relevant to this case, including the facts regarding Ms. Berry's employment and other Liberty Mutual personnel who were involved in the review of the claims in that case, whom Judge Surrick found worked under the supervision of Liberty Life's officer and its board. As in this case, Judge Surrick also noted that although Liberty Mutual's name was on the correspondence, it was Liberty Life's letterhead, with Liberty Life's contact information. <u>Id.</u> at *15. Judge Surrick also relied upon an affidavit from Assistant Secretary Pugh, which contained substantially the same information as is presented in this case with respect to the corporate relationship and structures of Liberty Mutual and Liberty Life. <u>Id.</u>

Importantly, as in this case, Judge Surrick found that the evidence showed that although the individuals who worked on the benefits determination may have been paid by Liberty Mutual, "it is apparent throughout the administrative record that those individuals were acting as agents for Liberty Life; sending correspondence on behalf of Liberty Life and ultimately being supervised by Liberty Life." Id. Judge Surrick further distinguished the case before him from Anderson, as we have done here, where all of the relevant communications showed that the administrator did not make the benefits determination at issue, and where the administrator in fact had no involvement at all in the benefits determination. Id. at *16 ("There is simply no evidence that Liberty Mutual had any involvement in the benefits determination, other than issuing paychecks to the agents of Liberty Life.").[2] Thus synthesizing and assessing the evidence – which is essentially the same as that presented in this action

---

[2] In his reply brief, the plaintiff has urged the court to disregard entirely Judge Surrick's opinion in Lucas because, at the time the parties were briefing this issue regarding the appropriate standard of review, that opinion was under seal. The court's opinion was subsequently unsealed and is now available, and has been placed on the docket of this action. (Doc. 40.) The plaintiff seems to be suggesting that the court should not consider the opinion in any way both because he lacked sufficient notice of it, and because the opinion is not precedential. We disagree that the court should ignore the opinion, which addresses issues that are squarely on point – indeed, which are identical to those presented here. And Judge Surrick's opinion considered virtually the same evidence, and the same factual circumstances, that frame the instant matter. It makes little sense for the court to ignore that this very issue was considered by another court within this circuit just last year.

– Judge Surrick concluded that Liberty Life had not delegated its authority to an unauthorized third party, and, therefore, concluded that the arbitary and capricious standard of review should apply to its decision-making.

Upon due consideration, we believe that the same result should obtain here, where the plaintiff has come forward with little more evidence to demonstrate the alleged unauthorized delegation of authority than some ambiguity or isolated uncertainty in Ms. Berry's deposition testimony, and the fact that Liberty Mutual's name also appears on the Liberty Life letterhead that Liberty Life used to notify Mr. Cipriani of its adverse decisions with respect to his LTD benefits claim. In marked contrast to this very limited evidence, Liberty Life has demonstrated the nature of the relationship that it shares with Liberty Mutual, including the use of Liberty Mutual personnel who are essentially tasked with rendering services to Liberty Life under Liberty Life's ultimate supervision and control. Liberty Life has persuaded us that there was no unauthorized delegation of authority to Liberty Mutual; rather, Liberty Life retained its discretion to make the benefits determinations under the Turner LTD Plan, and pursuant to a longstanding agreement did so by utilizing the services of Liberty Mutual administrators who were acting as agents of Liberty Life, sending correspondence on behalf of Liberty Life, and ultimately acting under the supervision and control of Liberty Life. As Judge Surrick found in Lucas, this evidence is

17

sufficient to demonstrate that Liberty Life retained for itself the discretion with which it was vested under the plan, and, therefore, the court's review of its benefits determination in this case should be undertaken pursuant to an arbitrary and capricious standard.

Having reached this result however we note that for the defendant this entire dispute could be avoided through the exercise of greater care and clarity. Given the importance of these LTD issues for all involved we commend to the defendant the many merits of greater clarity.

## IV. **RECOMMENDATION**

Accordingly, for the foregoing reasons, it is recommended that the court deny the plaintiff's motion to determine the standard of review to the extent the plaintiff seeks *de novo* review of his claims. (Doc. 33.) It is further recommended that the court review Liberty Life's decision to deny the plaintiff's claim for LTD benefits under the arbitrary and capricious standard of review because the decision being challenged was made by Liberty Life, which was vested with discretion as the plan administrator under the Turner LTD Plan, and Liberty Life did not delegate that authority to Liberty Mutual.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 24th day of August 2015.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge